IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| RONALD JONES,<br><br>    Plaintiff,<br><br>  v.<br><br>SANKO STEAMSHIP CO., LTD, S.K. SHIPPING CO., LTD, GRANDSLAM ENTERPRISE CORP., HARMONY STEVEDORING SERVICES, and HYUNDAE SHIP'S SUPPLY CO.,<br><br>    Defendants. | HONORABLE JEROME B. SIMANDLE<br><br>Civil Action<br>No. 10-6787 (JBS/KMW)<br><br>**MEMORANDUM OPINION** |

**SIMANDLE, Chief Judge:**

While working as a longshoreman on Camden, New Jersey's Pier No. 1 during cargo operations conducted by his employer, the Delaware River Stevedores, Inc. (hereinafter, "DRS"), on M/V SANKO SUMMIT (hereinafter, "SANKO"), Plaintiff Ronald Jones (hereinafter, "Plaintiff") suffered serious injuries when a "cut" rope sling parted, and caused a pre-slung plywood bundle to fall on his legs. As a result of these injuries, Plaintiff brought claims under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 905(b) (hereinafter, the "LHWCA") against an array of entities.

On December 8, 2015, this Court granted summary judgment in favor of the bareboat charter/owner *pro hac vice*, Defendant Grandslam Enterprise Corp. (hereinafter, "Grandslam"), but

denied summary judgment in favor of the time charterer, Defendant SK Shipping Co., Ltd. (hereinafter, "SK" and together with Plaintiff, the "moving parties")). See Jones v. Sanko Steamship Co., Ltd, ___ F. Supp. 3d ____, No. 10-6787, 2015 WL 8361745 (D.N.J. Dec. 8, 2015) (hereinafter, the "summary judgment decision" or the "SMJ decision")).  In the wake of the summary judgment decision, the Court now confronts motions for reconsideration by Plaintiff (relative to the entry of summary judgment in favor of Grandslam) and SK (relative to the denial of summary judgment in its favor).  [See Docket Items 146 & 151] In connection with both motions, though, the moving parties simply rehash the arguments expressly considered – and previously rejected – in the Court's summary judgment decision.

Plaintiff, for instance, restates (1) his position concerning when the "cut" occurred (compare Pl.'s Grandslam SMJ Opp'n Br. at 31-33, with SMJ decision at 18-19 & n.27 and Pl.'s Recon. Br. at 4-7), (2) his view that the rope sling constituted part of the SANKO's "equipment" (compare Pl.'s Grandslam SMJ Opp'n Br. at 26-30, with SMJ decision at 29-31 & n. 37-38 and Pl.'s Recon. Br. at 7-13), and (3) his opinion that the International Safety Management (hereinafter, "ISM") Code and/or SANKO's internal operating procedures somehow expanded the duty of care Grandslam owed to Plaintiff. (Compare Pl.'s Grandslam SMJ Opp'n Br. at 30-31, with SMJ decision at 33 & n. 39 and

2

Pl.'s Reconsideration Br. at 14-24.)  SK, in turn, advances its prior arguments concerning (1) the recency of the "cut" to the sling, (2) the SK Port Captains' limited role in the cargo operations, and (3) the impact, or lack thereof, of its Guidelines for Sling Management and Port Captain Manual on the scope of its oversight of its own stevedores.  (Compare SK's SMJ Br. at 35-42, with SMJ decision at 36-41 and SK's Reconsideration Br. at 9-13, 21-22.)

In other words, the motions for reconsideration present little more than disagreement with this Court's summary judgment decision, and for the more detailed reasons that follow, both will be denied.  The Court finds as follows:

1.  **Summary Judgment Decision**.  In a forty-three page decision dated December 8, 2015, the Court recited, at great length, the factual background relative to Grandslam's and SK's involvement in the plywood shipment at issue in this litigation, see Jones, ___ F. Supp. 3d ___, 2015 WL 8361745, at *2-*7, the framework for liability under the LHWCA and general maritime law, see id. at *7-*9, and then the specific contours of the duties owed by Grandslam and SK in this instance.  See id. at *9-*17.

2.  With respect to Grandslam, the "bareboat charterer," this Court detailed the scope of its turnover duty under Scindia Steam Navigation Co. v. De Los Santos, 451 U.S. 156 (1981) and

Howlett v. Birkdale Shipping Co., S.A., 512 U.S. 92 (1994), and then explained that, in order to succeed against Grandslam for breach of the turnover duty, Plaintiff must show:

> (1) that a defect in the vessel, its equipment, or a latent defect in the cargo area caused the accident; (2) that the vessel owner/owner pro hac vice knew about the hazard or should have discovered it before turning over the vessel to the stevedore; (3) that the known or knowable hazard constituted one of the type that the stevedoring company would likely or ordinarily have encountered in the course of cargo operations; and (4) that the hazard would not have been obvious to or anticipated by a reasonably competent stevedore.

Id. at *10 (citations and emphasis omitted). This Court concluded, however, that Plaintiff could not meet the first two elements, because the undisputed record evidence reflected that the hazardous condition implicated here (e.g., the "cut" rope sling) came aboard "the vessel *after* turnover, and in relation to an implement unconnected to the vessel, its equipment, or the cargo area."[1]  Id. at *11 (emphasis in original). In so concluding, the Court rejected Plaintiff's characterization of the rope slings as part of the SANKO's equipment (as opposed to a component of the cargo) on an array of legal and factual

---

[1] In other words, the Court concluded that Grandslam "played no role" in the cargo operations (in Camden or in Tanjung Manis), and observed that it was "undisputed that Grandslam had no access to or control over the cargo ropes that came aboard the vessel for the first time during the loading operations of Malaysian stevedores." Jones, ___ F. Supp. 3d ____, 2015 WL 8361745, at *11.

4

bases. See id. at *11 n.37. Even more critically, though, the Court reasoned that Plaintiff's argument on the scope of Grandslam's turnover duty ran directly counter to the Supreme Court's interpretation of the LHWCA. See id. at *12. For all of these largely independent reasons, the Court determined that Plaintiff could not, as a matter of law, demonstrate that Grandslam breached its turnover duty under Scindia and its progeny. See id.

3. Turning then to whether a contract, positive law, or custom supplanted Grandslam's general duties under Scindia, the Court rejected Plaintiff's position that the ISM Code and/or Grandslam's internal operating procedures "somehow create[d] an expansive duty of care beyond that of Scindia and Howlett." Id. at *12. In so finding, the Court followed the overwhelming weight of authority rejecting the notion that the ISM Code and/or a ship's internal safety manuals "create[] duties running from vessels to longshoremen in excess of those set out in the LHWCA." Id. at *13 & n.39 (citations omitted). Aside from this legal conclusion, the Court observed, as a factual matter, that Grandslam's internal procedures did "not mention longshoremen, the stevedores, or cargo-oriented tools (like, rope slings), and [spoke] primarily (if not exclusively) in terms of the SANKO crews' responsibility for the SANKO equipment used in connection with cargo operations (like, the crane, hatch covers, and deck

lights)." Id. at *13 (emphasis added). The Court therefore found these documents unavailing as a source of any heightened duty, because the rope slings did not, and do not, constitute equipment. See id. For all of those reasons, this Court found Grandslam entitled to summary judgment.

    4.   With respect to SK, however, the Court confronted a contextually different set of circumstances, in large part, because the scope of SK's turnover duty, as the "time charterer," differed from that Grandslam. Id. at *13-*14. Even more critically, though, the Court recited the genuine record evidence reflecting "(1) that SK selected, owned, and supplied all of the pre-slings carried aboard the SANKO, including the "cut" rope sling at issue here; (2) that SK did not 'carefully' inspect the conditions and/or safety of the rope slings;" and (3) that SK, through its own conduct and internal policies, "actively supervised the cargo operations of its international and domestic stevedores."[2] Id. at *14. The Court then detailed certain aspects of SK's Guidelines for Sling Managements (most especially, those provisions that required SK port captains to

---

[2] In addition, the Court found that the question of whether the "cut" sling proved open and obvious could not be resolved upon the competing evidence presented on summary judgment. See Jones, ___ F. Supp. 3d ___, 2015 WL 8361745, at *14. SK, however, does not challenge this portion of the Court's summary judgment decision, and so the Court need not provide any additional detail. (See SK's Recon. Br. at 19 n.5.)

"'carefully check,' 'inspect,' and 'supervise'" sling quality, condition, and use during cargo loading), as well as the SK Port Captains' own testimony concerning their actual involvement in, and supervision over, the cargo operations at issue here. Id. at *14-*15 (citations omitted). Against that backdrop, this Court stated that it could not "conclude that SK acted reasonably under all of the existing circumstances as a matter of law, because th[e] collective evidence, examined in the light most [favorable] to Plaintiff, creates at least a reasonable inference of negligence." Id. at *15 (emphasis in original). For all of those reasons, this Court found that factual disputes preclude the entry of summary judgment in favor of SK.

5.  SK filed its motion for reconsideration on December 23, 2015 [see Docket Item 146], and Plaintiff's motion for reconsideration followed on January 5, 2016. [See Docket Item 151.]

6.  **Standard of Review**. Local Civil Rule 7.1(i) governs the Court's review of the moving parties' motions for reconsideration.[3] In order to prevail on a motion for

---

[3] Although Plaintiff improperly filed his motion as one seeking relief under Federal Rule of Civil Procedure 59(e), as discussed below, extant authority explains that Local Civil Rule 7.1(i) embodies the relevant standard, regardless of the manner in which Plaintiff styled his motion. See, e.g., Grossberger v. Saldutti, 834 F. Supp. 2d 209, 216 (D.N.J. 2011); Ivan v. Cnty. of Middlesex, 612 F. Supp. 2d 546, 550 (D.N.J. 2009); Vasquez v. Batiste, No. 14-4366, 2015 WL 6687549 (D.N.J. Oct. 30, 2015);

reconsideration, the party seeking reconsideration must, as relevant here, demonstrate "'the need to correct a clear error of law or fact or to prevent manifest injustice.'"[4] Andreyko v. Sunrise Sr. Living, Inc., 993 F. Supp. 2d 475, 478 (D.N.J. 2014) (citations omitted); Lazaridis v. Wehmer, 591 F.3d 666, 669 (citation omitted) (3d Cir. 2010) (same). More specifically, the moving party must set forth the "'dispositive factual matters or controlling decisions of law'" it believes the Court overlooked when rendering its initial decision. Mitchell v. Twp. of Willingboro Mun. Gov't, 913 F. Supp. 2d 62, 78 (D.N.J. 2012) (citation omitted).

    7.    In that way, a party seeking reconsideration must meet a high burden. See United States v. Jones, 158 F.R.D. 309, 314 (D.N.J. 1994); Maldonado v. Lucca, 636 F. Supp. 621, 629 (D.N.J. 1986). Even more critically, though, reconsideration does not provide "an opportunity for a second bite at the apple," Tishcio v. Bontex, Inc., 16 F. Supp. 2d 511, 532 (D.N.J. 1998), nor a vehicle "to relitigate old matters." NL Indus., Inc. v.

---

Tuytjens v. United States, No. 13-7597, 2015 WL 5882820, at *2 (D.N.J. Oct. 6, 2015) (same); Fabics v. City of New Brunswick, No. 13-6025, 2015 WL 5167153, at *3 (D.N.J. Sept. 3, 2015) (same); Nkansah v. Aviles, No. 15-2678, 2015 WL 4647988, at *2 (D.N.J. Aug. 5, 2015) (same).

[4] A party seeking reconsideration could, in the alternative, identify an intervening change in law and/or the availability of previously unavailable evidence. See Andreyko, 993 F. Supp. 2d at 478 (citations omitted). The moving parties here, however, advance no such arguments.

8

Commercial Union Ins. Co., 935 F. Supp. 513, 516 (D.N.J. 1996). Indeed, mere disagreement with the court's decision – particularly its reasoning and distillation of the applicable law and facts – should be aired through the appellate process. See Andreyko, 993 F. Supp. 2d at 478; see also Shevline v. Phoenix Life Ins., No. 09-6323, 2015 WL 348552, at *1 (D.N.J. Jan. 23, 2015) (same).

8. Here, the Court first addresses two introductory deficiencies common to both motions, before turning to the moving parties' more specific (and less intertwined) challenges.

9. **The Motions are Untimely**.[5] As an initial matter, Plaintiff improperly filed his motion as one seeking reconsideration under Local Civil Rule 7.1(i) and Federal Rule of Civil Procedure 59(e). The provisions of Federal Rule of Civil Procedure 59 address orders rendering a final judgment, not interlocutory orders, like the summary judgment decision, denying summary judgment on some, but not all, of a party's claims. See Pellicano v. Blue Cross Blue Shield Ass'n, 540 F. App'x. 95, 97 n.4 (3d Cir. 2013) (citation omitted) ("[B]ecause an order dismissing fewer than all claims or parties is generally not a final judgment, a Rule 59(e) motion to challenge such an order may only be filed after the district court enters

---

[5] Indeed, Grandslam challenges Plaintiff's motion on precisely that basis. (See Grandslam's Opp'n at 1-2.)

9

the final judgment."). Because no final judgment has been entered in this action pursuant to Federal Rule of Civil Procedure 54(b), the provisions of Rule 59(e), and its 28-day time limit, have no application in this instance.[6] See Bridges v. Colvin, ___ F. Supp. 3d ____, No. 12-2316, 2015 WL 5737353, at *4 (E.D. Pa. Sept. 30, 2015) (finding Rule 59(e) inapplicable to the plaintiff's request for reconsideration, given the absence of a final judgment); Mitchell, 913 F. Supp. 2d at 78 (same). Rather, Local Civil Rule 7.1(i) provides the proper procedural mechanism for reconsideration of this Court's interlocutory summary judgment decision.

    10. Local Civil Rule 7.1(i), however, requires that a motion for reconsideration be served and filed within 14 days from entry of the Order on the original motion.[7] See L. Civ. R. 7.1(i). In this case, Plaintiff and SK filed their motions for

---

[6] This Court's decision in Navarrete v. United States, No. 09-3683, 2013 WL 796274 (D.N.J. Mar. 4, 2013), aff'd, 532 F. App'x 121 (3d Cir. 2013), compels no contrary conclusion. In Navarrete, a party sought reconsideration of this Court's decision granting summary judgment as to all claims against the single remaining defendant. See id. at *1. For that reason, this Court applied Federal Rule of Civil Procedure 59(e) to the plaintiff's reconsideration submission. See id. at *2. Here, by contrast, this Court's summary judgment decision plainly left open Plaintiff's claims against SK, and so no final judgment has been entered.

[7] Such a rule proves particularly important in this case, given the vintage of this action, and the over five years expended by the parties, free of motion practice, in pretrial factual discovery.

reconsideration 28 and 15 days, respectively, after the court entered its summary judgment decision.  [See Docket Items 146 & 151.]  The moving parties' failure to file their motions within the fourteen-day period prescribed by the Local Rule provides a basis, on its own, to deny their motions.  See Mitchell, 913 F. Supp. 2d at 78 (D.N.J. 2012) (citing cases, and denying a motion for reconsideration as untimely).  The Court will therefore deny the motions for reconsideration as untimely.  Despite this issue, the Court will equally deny the motions for lack of merit.

    11.  **The Moving Parties' Challenges to the Court's Observation Concerning the Timing of the "cut"**.  On the merits, the Court first addresses the moving parties' relatively common contention concerning the time at which the "cut" occurred.  More specifically, the moving parties argue, from different vantages, that the Court "overlooked" Plaintiff's factual position that the "cut" "either occurred in Tanjung Manis" or "sometime prior to the slings arrival at that port" (Pl.'s Recon. Br. at 4-7), and SK's factual position that the "cut" must have occurred just prior to the accident.  (See SK's Recon. Br. at 18-20.)

    12.  In the prefatory portion of its summary judgment decision, this Court observed the parties' essential agreement "that the single 'cut' could have occurred at any time prior to

11

Plaintiff's incident." Jones, ___ F. Supp. 3d ____, 2015 WL 8361745, at *2.  The moving parties take issue with this general observation, based upon their belief that certain evidence supports their position on the more precise timing of the "cut." Nevertheless, the Court finds these challenges unavailing because, as generally recited in the summary judgment decision, Plaintiff's own expert explained the lack of scientific evidence relative to the timing of the cut, and specifically stated that it could have occurred at any time prior to the incident.  (See Grandslam's Recon. Opp'n Br. at 5-6 (citation omitted).)

     13.  SK, in turn, agrees that the "cut" could have occurred at any time, but points to the experts' alleged agreement that the "cut" could only have occurred "'recently.'"  (SK's Recon. Br. at 19.)  Based upon that term alone, SK then claims that the evidence supports only the conclusion that the cut occurred "**just prior to the Accident**."  (Id. (emphasis in original).) SK's position, however, fundamentally overstates the clarity of the "evidence" on recency (a term not defined by the experts that used it), and ignores the evidence that suggests that the "cut" could not have occurred in transit (internationally), nor at the time the Camden stevedores connected the sling for unloading (given the nature of the implements used by the DRS stevedores).  (See, e.g., Pl.'s SK SMF at ¶¶ 87-88; see also Pl.'s SK Recon. Opp'n at 5-8.)  Against that backdrop, the Court

12

discerns no error in its observation that the "actual source and timing of the cut ... remains unknown." Jones, ___ F. Supp. 3d ____, 2015 WL 8361745, at *6 n.27

14. Even more importantly, though, the precise timing of the cut proves largely meaningless for purposes of the pending motions (and in relation to the summary judgment decision), given the evidence, discussed at length in the summary judgment decision, that SK exercised at least some oversight over cargo operations in Tanjung Manis and Camden, and in relation to the stevedores' use of its own rope slings. See Jones, ___ F. Supp. 3d ____, 2015 WL 8361745, at *14-*15.

15. For all of these reasons, the Court finds no basis to reconsider its summary judgment decision on account of the timing of the "cut," and therefore turns to the moving parties' alternative positions.

16. **Plaintiff's Remaining Positions on Reconsideration**. In the remainder of his reconsideration submission, Plaintiff takes the position that the Court "overlooked" matters in finding the rope slings part of the cargo rather than part of the SANKO's equipment, and, relatedly, in the Court's interpretation of the ISM Code and Grandslam's internal documents. (Pl.'s Recon. Br. at 7-24.) These arguments, however, present little more than Plaintiff's disagreement with the Court's prior conclusions, and

13

not a demonstration of any dispositive factual matters or controlling legal authorities actually overlooked by this Court.

17.  Indeed, in again claiming that the "cut" rope sling constituted "equipment" (and thereby heightened Grandslam's duty), Plaintiff, as noted by Grandslam, simply recapitulates his position that Grandslam could be held to a duty that transcends the Supreme Court's interpretation of the LHWCA. (Pl.'s Recon. Br. at 7, 11-14; see also Grandslam's Recon. Opp'n at 7-13.)  Based upon this view (one rejected by this Court) and his reading of certain non-binding decisions and regulations (sources considered and rejected by this Court), Plaintiff submits, for the second time, that the rope slings constitute equipment.  (See generally id. at 7-14.)  In that way, though, Plaintiff's position rests upon his disagreement with the Court's treatment of non-binding decisions, application of binding Supreme Court precedent, and view of Grandslam's lack of involvement in the cargo operations (or in any other way relevant to the rope slings).  Nevertheless, the Court fully and comprehensively considered these arguments, and finds no reason to revisit them now.  See generally Jones, ___ F. Supp. 3d ____, 2015 WL 8361745, at *10-*12.

18.  With respect to Plaintiff's position on the ISM Code and Grandslam's internal safety procedures, Plaintiff similarly repeats, as noted by Grandslam, its prior arguments.  (See Pl.'s

14

Recon. Br. at 14-24; see also Grandslam's Recon. Opp'n at 13-15.) Nevertheless, in rejecting the ISM Code as a basis for heightened duties, this Court "join[ed] the weight of authority in finding," as a matter of law, "that the ISM Code provides him with no relief," and Plaintiff again proffers no controlling contrary authority. Jones, ___ F. Supp. 3d ____, 2015 WL 8361745, at *12 n.39. Similarly, in finding Plaintiff's reliance upon the internal safety guides "misplaced as a basis to enhance the otherwise-applicable Scindia duties," the Court observed that the internal safety guides exclusively govern equipment (and not cargo-oriented tools, like rope slings at issue here), and could not, as a matter of law, impose heightened duties upon Grandslam. Id. at *12-*13. On this issue too, Plaintiff, again, offers no dispositive factual matter or controlling legal decision to the contrary. (See generally Pl.'s Recon. Br. at 19-24.) For all of these reasons, Plaintiff's motion for reconsideration will be denied.

19. **SK's Remaining Positions on Reconsideration**. In the remainder of its reconsideration submission, SK advances its view that the Court "overlooked" factual matters related to the SK Port Captains' involvement in cargo operations, and on the duties, if any, imparted by SK's own internal documents. (SK's Recon. Br. at 4-13.) More specifically, SK essentially takes the position that its activities at the loading port in Tanjung

15

Manis have no relevance to this litigation, because the "cut" could, allegedly, only have occurred just prior to the accident. (SK's Recon. Br. at 21.)

20. Nevertheless, this Court, as explained above, finds SK's narrow view on the timing of the "cut" unconvincing. Even more importantly, though, SK does not dispute that its internal documents (most especially, its Guidelines for Sling Management) required that SK port captains exercise some oversight over cargo operations involving rope slings,[8] nor that the testimony of its Port Captain creates at least some inference that the Port Captains did indeed act in at least a quasi-supervisory capacity at all times relevant to this litigation (and both in Tanjung Manis and in Camden). (See, e.g., SK's Recon. Br. at 3, 5, 11-12; see also Pl.'s SK Recon. Opp'n at 9-16 (recounting the evidence recited in the summary judgment decision on these issues).) This involvement includes, in SK's own words, a

---

[8] Rather, SK takes exception to this Court's summary judgment decision, because the SK port captains' duties, as partially laid out in the Guidelines for Sling Management, impose different obligations upon the port captains at the loading and unloading ports. (See SK's Recon. Br. at 10-13.) More specifically, at the loading port, SK port captains must carefully check, inspect, and confirm cling quality, quantity, condition, and use; while, at the unloading port, SK port captains must simply collect, discard, and deliver the use slings. (See SK's Recon. Br. at 10-11.) SK's challenge, however, rests upon the twice-rejected notion that the "cut" could only have occurred at the unloading port in Camden. (See generally id.) Thus, it provides no basis for reconsideration.

16

telephone call and meeting between SK's US-based Port Captain Se Jin Joo (hereinafter, "Captain Joo") and DRS Captain James Hassall, "a brief visual inspection of the general cargo conditions," and various contact between Captain Joo and DRS Captain Hassall in the wake of Plaintiff's accident. (SK's Recon. Br. at 5, 7-9; see also Pl.'s SK Recon. Opp'n at 15-16 (citing additional examples).) In their deposition testimony, SK's Malaysian Port Captain Jeong Hyun Kim and Captain Joo, then reiterated, as explained in the summary judgment decision, the obligations imparted by SK's Guidelines and the scope of their actual involvement in the circumstances (both loading and unloading) that spawn this litigation. See Jones, ___ F. Supp. 3d ____, 2015 WL 8361745, at *14-*15.

21.  In other words, although SK argues that it took a hands-off approach to the cargo operations, the evidence, as discussed in the summary judgment decision, and seen in the light most favorable to the opposing party, fairly supports a different story. See id. at *14-*15. SK's challenges to the weight of this evidence and/or to the credit-worthy nature of its Port Captains' recollection provide issues for resolution by the fact finder at trial, not by this Court on summary judgment. (See, e.g., SK's Recon. Br. at 6.) For all of these reasons, SK's motion for reconsideration will be denied.

22. An accompanying Order will be entered.


**March 2, 2016**           **s/ Jerome B. Simandle**
Date           JEROME B. SIMANDLE
         Chief U.S. District Judge

Case 1:10-cv-06787-JBS-KMW   Document 163   Filed 03/02/16   Page 18 of 18 PageID: 5444